## THOMAS *v.* BURKE

1. APPEAL AND ERROR—FINDINGS OF FACT.

    The Court of Appeals will not disturb the findings of fact by a trial court unless they are clearly erroneous (GCR 1963, 517.1).

2. CONTRACTS—ASSIGNMENT—NOTICE—EVIDENCE.

    Finding of trial court that plaintiff knew nothing of assignment of building contract by defendant to a third-party builder and that evidence was not adduced of value of defendant's services before assignment was supported by the record where both plaintiff and third party testified that nothing was said about the assignment during negotiation of a new contract between plaintiff and the third party and plaintiff insisted he knew nothing about it, and where the record contained no evidence from which the value of defendant's services could reasonably be inferred.

3. CONTRACTS—BUILDING CONTRACTS—ASSIGNMENT—DOWN PAYMENT —EVIDENCE.

    Defendant builder was not entitled to the down payment under a home construction contract with plaintiff where defendant did not build but assigned plaintiff's contract to another builder, and where there is no evidence from which the value of defendant's services before the assignment could be inferred.

4. CONTRACTS — BUILDING CONTRACTS — ASSIGNMENT — SERVICES — VALUE — EVIDENCE.

    That defendant builder's assignee agreed to construct plaintiff's home for $5,000 less than defendant's contract price, did not

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 839.
[2] 6 Am Jur 2d, Assignments § 99.
[3, 4] 13 Am Jur 2d, Building and Construction Contracts §§ 87–95.
[5, 6] 13 Am Jur 2d, Building and Construction Contracts §§ 18–25.
[7] 13 Am Jur 2d, Building and Construction Contracts §§ 91–93.
[8] 13 Am Jur 2d, Building and Construction Contracts §§ 47, 103.

support an inference that defendant's services under his contract before the assignment were worth $5,000.

5. Appeal and Error—Assignments—Services—Value—Evidence Preserving Question.

Value of defendant builder's services under his home construction contract with plaintiff, before defendant assigned that contract, could not be considered on appeal where the value of defendant's services was not in issue at trial, and the defendant did not seek restitution for his services by way of counterclaim or otherwise, nor did he explain that his assignee's testimony was being offered to establish the value of defendant's services.

6. Assignments — Contracts — Building Contracts — Down Payment — Assignor's Compensation.

That a $5,000 down payment made to defendant-builder before assignment of plaintiff's home construction contract was to be added to the price stated in plaintiff's new building contract with defendant's assignee, was not evident to a reasonable man in plaintiff's position, where there were any number of reasons why the assignee-builder might be willing or able to put up plaintiff's house for $5,000 less than that asked by defendant-builder.

7. Contracts—Building Contracts—Assignments—Notice—Consent.

Defendant builder who had accepted a down payment for the construction of plaintiff's home, but later assigned that contract to another builder without notifying plaintiff, had a duty to tell plaintiff that he intended to keep the down payment or, at least, that the down payment was to be added to plaintiff's separate building contract with defendant assignee and to obtain plaintiff's consent to such action.

8. Contracts—Building Contracts—Assignment—Down Payment —Return.

Plaintiff could reasonably conclude that he was entitled to the return of his down payment under a building contract on a house that defendant never built for him where there was no explanation why its construction was delayed and defendant, without notifying plaintiff that he had assigned the contract to another builder, introduced the assignee builder who, so far as plaintiff knew, was being offered by defendant as an expedient to save himself from a lawsuit for his contractual nonperformance.

Appeal from Common Pleas Court of Detroit, John W. Connolly, J. Submitted Division 1 October 8, 1969, at Detroit. (Docket No. 5,534.) Decided February 3, 1970.

Complaint by William H. Thomas against Edward M. Burke, Jr., for recovery of a down payment on a building contract. Judgment for plaintiff. Defendant appeals. Affirmed.

*Small & Small,* for plaintiff.

*Perry & Bahen,* for defendant.

Before: FITZGERALD, P. J., and MCGREGOR and V. J. BRENNAN, JJ.

V. J. BRENNAN, J. This is an action to recover a $5,000 down payment made under a building contract. The trial court entered a judgment in favor of the plaintiff and we affirm. The facts are summarized as follows:

In July, 1962, the plaintiff, William Thomas, along with his now-deceased wife, entered into a contract with the defendant builder for the construction of a house, paying $5,000 down. The balance of the $37,000 purchase price was to be paid in installments coinciding with various stages of construction; construction was to be commenced immediately after the financing was arranged, and completed within six months from commencement. A mortgage was finally approved in March of the following year, but for a total price of only $31,000. No work was started in building the house. In July, 1963, the parties modified the building specifications to reduce the costs and settled on a new price of $31,000.

Work was still not started however, and Thomas repeatedly attempted to contact the defendant but without success. In late September, 1963, the defendant, having decided to phase out his home building operation, assigned his rights under the contract to one John W. Bingham, a former employee who was launching his own construction business. It was agreed that the defendant would keep the $5,000 already paid, turn the plans over to Bingham and indemnify him for any losses suffered, and hold a right of final approval over the workmanship and materials. The Thomases were not told of the assignment. Two days later, the defendant introduced the Thomases to Bingham and told them that Bingham would build their house. The Thomases and Bingham then entered into a written contract for the construction of a house that met the same specifications as the house the defendant was to have built. The price was $26,000. The defendant did not tell the Thomases that he was to keep the $5,000 they had paid to him, and the Thomases, unaware of the assignment and its terms, neither consented to the defendant's keeping the $5,000, nor expressed an understanding that the money was to be kept by him. A house was subsequently built by Bingham without the defendant's further assistance, and Thomas brings this action.

The defendant contends that the $5,000 is his to keep and enlists essentially three arguments in support of his contention:

1) Thomas knew of the assignment (and therefore, we assume the defendant argues, should have known that he [the defendant] still considered himself responsible not only for the construction of a house but also the quality of construction, even though a new contract was signed with Bingham).

2) He is entitled to compensation for drawing the plans, arranging the financing, and making other preparations. The value of these services equals $5,000 and can be inferred from the evidence adduced at trial. If the value cannot be inferred from the evidence adduced, the case should be remanded for Bingham's testimony as to how the price of $26,000 was reached—testimony that was offered at trial but barred by the court. Bingham is competent to testify as to the value, and the value may be inferred from this testimony.

3) Thomas should have known from the circumstances that the $5,000 was to be added to the price stated in the Bingham contract, thereby making a total price of $31,000.

The first argument, along with part of the second, is factually defective. The trial court found that the Thomases knew nothing of the assignment and that evidence indicating the value of the defendant's services was not adduced. This Court will not disturb the findings of a trial court sitting as the trier of fact unless they are clearly erroneous. GCR 1963, 517.1; *Sears, Roebuck & Co.* v. *Thomas* (1966), 3 Mich App 539; *King* v. *Partridge* (1968), 9 Mich App 540. Both Thomas and Bingham testified that nothing was said about the assignment and Thomas insisted that he had no knowledge of it. A review of the record discloses no evidence from which the value of the defendant's services could reasonably be inferred, were it to be assumed that the defendant is entitled to compensation; it does not follow from Bingham's offering to build for $5,000 less than the defendant's price, that the defendant's services are worth $5,000. The trial court's findings are well supported by the record.

The second argument is also defective in that the value of the defendant's services was not put in

issue at trial, notwithstanding the implication to the contrary created by the court's finding. The defendant did not seek in his pleadings, by way of counterclaim or otherwise, restitution for the value of his services; nor did he explain that he was offering Bingham's testimony to establish their value.* Since the issue was not raised below, it may not serve as a basis for reversal. *Poss* v. *Rossen-Poss Agency, Inc.* (1966), 3 Mich App 726; *Snider* v. *Dunn* (1968), 11 Mich App 39.

The third argument does not depend on what the Thomases actually knew, but on what a reasonable man would have known were he in their position. Unlike the defendant, however, we do not consider it at all evident that a reasonable man would have known that the $5,000 was to be added to the price stated in the Bingham contract. In the first place, there are any number of reasons why a builder might be willing or able to put up a house for $5,000 less than that asked by another builder. For example, he may be just beginning in the business and therefore willing to build at close to cost for promotion; or, he may be willing to supervise the work in the field, thereby saving the expense of a foreman. In addition, the contract did say the price was to be $26,000 and did not mention the $5,000 paid to the defendant. Even if it were evident that the defendant intended to keep the $5,000, or, at least, that the $5,000 was to be added to the price stated in the contract, the defendant was under a duty to apprise the Thomases of his intentions and secure their con-

---

* The testimony was offered to show that Bingham considered the defendant's preparation before arriving at his price and thought the $5,000 was to be part of the overall price. The court ruled that the considerations entertained by Bingham and Burke in arriving at Bingham's terms could not be shown by parol evidence since the terms were reduced to a written contract. Whether Bingham thought the $5,000 was to be part of the overall price was immaterial since the Thomases were unaware of the assignment.

sent. Unaware of the assignment and its terms, the Thomases could reasonably conclude from both the unexplained delay in construction and the defendant's introducing them to another builder that the defendant no longer intended either to build a house or to be responsible for the quality of its construction and thus that they were without a builder. Still wanting a home, the Thomases undertook a new obligation—the contract with Bingham—reasonably believing that they were entitled to the return of the down payment on a house that was never built. As far as the Thomases knew, the defendant abandoned his contract and offered the Bingham contract as an expedient to save himself from a lawsuit for his nonperformance. It would have been a simple matter for him to apprise the Thomases of his intentions.

Affirmed.

All concurred.