KLEIN v KIK

Docket No. 250679. Submitted January 4, 2005, at Grand Rapids. Decided January 11, 2005, at 9:00 a.m. Leave to appeal sought.

Melissa Klein, as personal representative of the estate of Matthew Conklin, deceased, brought an action in the Kalamazoo Circuit Court against Richard Kik, Jr., M.D., and Bronson Hospital, alleging medical malpractice resulting in the decedent's death. The court, Philip D. Schaefer, J., denied the defendants' motion for summary disposition, which argued that the plaintiff could not establish that the decedent had a fifty percent opportunity to survive, as required by MCL 600.2912a(2), because the case was not an action relating to the opportunity to achieve a better result. Bronson settled with the plaintiff, and Dr. Kik appealed the denial of summary disposition on the basis that MCL 600.2912a(2) precludes recovery by the plaintiff in this case.

The Court of Appeals *held*:

Dr. Kik is entitled to summary disposition because MCL 600.2912a(2) precludes recovery by the plaintiff in this case. The plaintiff's expert stated that the reduction of the chances of survival caused by malpractice and measured between the time of the alleged misdiagnosis in March 1998 and the time of the proper diagnosis on July 14, 1998, was forty-five percent. That is an inadequate basis for a malpractice suit under MCL 600.2912a(2), which, as interpreted in *Fulton v William Beaumont Hosp*, 253 Mich App 70 (2002), requires a reduction of the chances of survival by more than fifty percent.

Reversed in part.

Nᴇɢʟɪɢᴇɴᴄᴇ — Mᴇᴅɪᴄᴀʟ Mᴀʟᴘʀᴀᴄᴛɪᴄᴇ — Lᴏss ᴏꜰ Oᴘᴘᴏʀᴛᴜɴɪᴛʏ ᴛᴏ Sᴜʀᴠɪᴠᴇ ᴏʀ Aᴄʜɪᴇᴠᴇ ᴀ Bᴇᴛᴛᴇʀ Rᴇsᴜʟᴛ.

A medical malpractice plaintiff seeking recovery for the loss of an opportunity to survive or to achieve a better result must show that the alleged malpractice reduced the opportunity by more than fifty percent (MCL 600.2912a[2]).

*Charfoos & Christensen, P.C.* (by *David R. Parker, J. Douglas Peters*, and *Ann K. Mandt*), for the plaintiff.

*Hackney Grover Hoover & Bean, PLC* (by *Brett J. Bean* and *Lyn N. Handel*), for the defendant.

Before: SMOLENSKI, P.J., and SAAD and BANDSTRA, JJ.

SMOLENSKI, P.J. Defendant Richard Kik, Jr., M.D., appeals by leave granted the trial court's decision denying summary disposition. The only issue on appeal is whether the court erred in refusing to apply the causation requirement of MCL 600.2912a(2) to plaintiff's medical malpractice claim. We find that the court so erred and, pursuant to this Court's interpretation of MCL 600.2912a(2) in *Fulton v William Beaumont Hosp*, 253 Mich App 70; 655 NW2d 569 (2002), we reverse in part.[1]

### I. BACKGROUND

Plaintiff Melissa Klein brought this wrongful death action as personal representative of the estate of Matthew Conklin (decedent). The decedent received treatment on or around March 30, 1998, at Westside Family Medical Center, the place of employment of defendant Dr. Richard Kik, Jr. Plaintiff alleges that a physician's assistant under the supervision of defendant misdiagnosed the decedent, who complained of severe respiratory problems and pain in his lower chest and back. The assistant did not order a chest x-ray and treated the decedent for bronchitis/sinusitis or pneumonia. The decedent actually had Ewings sarcoma, a rare form of lung cancer. He returned to defendant's office and was given a chest x-ray on July 14, 1998. The x-ray revealed

---

[1] We do not disturb that portion of the order denying summary disposition to defendant Bronson Hospital regarding its vicarious liability argument. We note that our decision is of no direct consequence to Bronson Hospital because it settled with plaintiff.

fluid in his right thorax, which prompted defendant to send the decedent to the emergency room. Subsequent testing confirmed the presence of cancer, which claimed the decedent's life at the age of twenty-two on July 2, 2000, after several rounds of chemotherapy and radiation treatment. Plaintiff's claim and defendant's liability hinge on the significance of the delay in discovering the cancer between March 30 and July 14 in 1998.

Bronson Hospital, a codefendant that later settled the case, moved for summary disposition under MCR 2.116(C)(10) on the ground that plaintiff could not establish that the decedent had a fifty percent opportunity to survive, as required by MCL 600.2912a(2). Defendant concurred. The trial court denied the motion in a written order that reads, in part:

> [Bronson Hospital] contends that Plaintiff is required to prove that his opportunity to achieve a better result was reduced by more than 50% as a result of Defendant's alleged malpractice. However, since on its face this does not appear to be an action for a lost opportunity to achieve a better result, pursuant to MCL 600.2912a(2), and the Plaintiff has agreed to strike any language from the pleadings that allege a cause of action for lost opportunity, the court considers this issue moot.

This Court granted defendant's motion for leave to appeal and, on its own motion, stayed further proceedings in the lower court. For the reasons stated below, the trial court's order is reversed with respect to the section entitled "Lost Opportunity." Defendant is entitled to summary disposition on this issue because application of MCL 600.2912a(2) precludes recovery by plaintiff in this case.

## II. STANDARD OF REVIEW

This Court reviews de novo a circuit court's decision denying summary disposition. *Dressel v Ameribank,* 468

Mich 557, 561; 664 NW2d 151 (2003). Summary disposition of all or part of a claim or defense may be granted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). A motion for summary disposition under MCR 2.1116(C)(10) challenges the factual sufficiency of the complaint. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). The court must consider all pleadings, depositions, admissions and other documentary evidence in the light most favorable to the nonmoving party. *Id.*

### III. ANALYSIS

To have a cause of action for medical malpractice, a plaintiff must establish that the defendant's malpractice was the proximate cause of plaintiff's injury. *Weymers v Khera*, 454 Mich 639, 655; 563 NW2d 647 (1997). This common-law element is codified in MCL 600.2912a(2), which states:

> In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants. In an action alleging medical malpractice, the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than 50%.

The issue in *Fulton* was "whether the second sentence of the statute requires a plaintiff in order to recover for loss of an opportunity to survive to show only that the initial opportunity to survive before the alleged malpractice was greater than fifty percent . . . or, instead, that the opportunity to survive was reduced by greater than fifty percent because of the alleged malprac-

tice . . . ." *Id.* at 77-78. The majority in *Fulton* held that
the second sentence of the statute meant that a plaintiff
must show that the opportunity to survive was reduced
by greater than fifty percent because of the alleged
malpractice. *Id.* at 83. We are bound to follow the
majority's conclusion. MCR 7.215(J)(1). See also *Ensink
v Mecosta Co Gen Hosp*, 262 Mich App 518, 532; 687
NW2d 143 (2004) (The Court agreed with the *Fulton*
dissent and followed the majority's interpretation only
because it was bound to do so.). Therefore, in this case,
MCL 600.2912a(2) requires plaintiff to show that the
decedent's chances of survival fell more than fifty
percent between the time of defendant's alleged mal-
practice on or around March 30, 1998, and the initial
discovery of the decedent's lung cancer on July 14,
1998.

The trial court erroneously concluded that plaintiff's
complaint stated a cause of action separate from loss of
opportunity after plaintiff agreed to strike the para-
graph in her complaint that specifically referred to lost
opportunity. The complaint states that this is "a medi-
cal malpractice, wrongful death action . . . ." On appeal,
plaintiff asserts that her claim is that defendant's
negligence caused the decedent's death, with death
being the injury. But regardless of plaintiff's word
choice, the gravamen of plaintiff's complaint remains a
cause of action for lost opportunity to survive brought
on the basis of defendant's alleged medical malpractice.
The present injury that defendant's malpractice alleg-
edly caused was not the decedent's death per se, as
plaintiff argues, but the increased chance of death
between decedent's two visits to defendant's medical
office. In other words, plaintiff is not alleging that
defendant somehow gave the decedent cancer or acted
in some other negligent manner that caused the dece-
dent to die; rather, plaintiff alleges that defendant

hastened the decedent's death as a result of the latter being misdiagnosed, which allowed the cancer to metastasize unabated for 3½ months. Plaintiff's attempt to distinguish the decedent's injury from his loss of opportunity to survive is futile because they are one and the same. To say in this case that defendant caused the decedent's injury is to say that defendant's malpractice deprived the decedent of a greater chance to survive, which necessitates application of MCL 600.2912a(2) as interpreted in *Fulton*.

Plaintiff's argument that MCL 600.2912a(2) only applies to a living victim and not to a wrongful death action is without merit. Our Supreme Court has clearly stated that a living plaintiff may not recover for loss of an opportunity to survive because the intent of the statute is to allow recovery for a present injury, not a potential one. *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 59-60; 631 NW2d 686 (2001). As discussed above, the decedent's present injury was his untimely death. Therefore, MCL 600.2912a(2) is applicable.

Although the trial court did not address the merits of whether plaintiff could maintain a cause of action in light of § 2912a, we find a remand is not necessary because the facts on the record are sufficient to resolve this issue. Viewed in the light most favorable to plaintiff, the documentary evidence shows that plaintiff cannot satisfy MCL 600.2912a(2). Dr. Gregory Reamon, plaintiff's sole medical expert, testified that, assuming the best circumstances (confinement of the cancer to the chest wall with no microscopic spreading and complete surgical removal followed with chemotherapy), the decedent's chances of survival in March 1998 were seventy-five percent. Assuming the worst on July 14, 1998, the decedent's chances of survival were thirty percent. The difference is forty-five percent, which is

below what MCL 600.2912a(2) requires as interpreted by the *Fulton* majority. Accordingly, plaintiff is precluded from maintaining her action and the trial court erred in not granting summary disposition on this basis.

Reamon's subsequent statements do not change this result. Six months after his deposition, Reamon stated in a sworn affidavit that the decedent's cancer should have been diagnosed in March 1998, and if it had, the decedent would have more likely than not survived disease free. As a matter of law, "parties may not contrive factual issues merely by asserting the contrary in an affidavit after having given damaging testimony in a deposition." *Dykes v William Beaumont Hosp*, 246 Mich App 471, 480; 633 NW2d 440 (2001) (citations and quotation marks omitted). Furthermore, because the affidavit did not explain how much more the decedent's opportunity for survival would have been, a comparison cannot be made to Reamon's thirty percent figure for the decedent's worst chance of survival after misdiagnosis and subsequent discovery, which was left unchanged. In other words, stating that decedent would have more likely than not lived had he been diagnosed in March 1998 does not mean that his chances for survival decreased by more than fifty percent as a result of defendant's alleged malpractice.

Plaintiff argues that, even if MCL 600.2912a is applicable, this cause of action meets the requirement of the statute because at the time of the decedent's death his chances of survival were zero. This argument is unavailing. The chances of survival at the time of death are irrelevant to the *Fulton* rule. What matters is the reduction of those chances because of the alleged malpractice. The critical points in time are the alleged misdiagnosis in late March 1998 and the beginning of

the proper diagnosis on July 14, 1998. Under the best circumstances for plaintiff's claim and according to plaintiff's own expert, the delay of 3½ months reduced the decedent's chances of survival by forty-five percent.

Additionally, plaintiff's contention that interpreting the second sentence of MCL 600.1292a(2) to apply to this case renders the first sentence mere surplusage is not persuasive. One can envision medical malpractice cases, including wrongful death cases, that still fall under the first sentence. They are cases, unlike this one, that do not allege lost opportunity, but allege a direct injury—e.g., amputating the wrong limb, negligently severing a vital blood vessel, administering too much anesthesia, etc. Again, in the case at bar, the only causal theory connecting defendant to the decedent's death is that the delay in diagnosis exacerbated the decedent's condition and deprived him of the chance he would have had to survive if he had been properly diagnosed in March 1998.

Reversed in part.