## 2000 BAUM FAMILY TRUST v BABEL

Docket No. 284547. Submitted June 3, 2009, at Lansing. Decided June
    23, 2009, at 9:05 a.m.

The 2000 Baum Family Trust and other owners of lots fronting Lake
    Charlevoix but separated from the water by Beach Drive, which
    was dedicated to public use in a subdivision plat that was recorded
    pursuant to 1887 PA 309, brought an action in the Charlevoix
    Circuit Court against William Babel and other back lot owners, the
    Charlevoix County Road Commission, and Charlevoix Township.
    The plaintiffs alleged trespass and nuisance, and sought injunctive
    relief against the back lot owners' use of the waterfront. The road
    commission counterclaimed trespass relating to boat docks, fences,
    landscaping, walls, septic drain fields, and a flagpole that all
    allegedly encroached on Beach Drive, which the road commission
    maintains. The back lot owners counterclaimed adverse possession
    or easement by acquiescence or prescription. Additional back lot
    owners were allowed to intervene as defendants and counterclaim
    adverse possession or easement by acquiescence or prescription.
    The plaintiffs moved for partial summary disposition against the
    road commission only, contending that they have riparian rights.
    The court, Richard M. Pajtas, J., denied the motion, ruling that the
    plaintiffs have no riparian rights because the statutory dedication
    of Beach Drive resulted in a fee vested in the public and the
    plaintiffs do not hold fee title to the waterfront land in front of
    their lots. The plaintiffs appealed by leave granted.

The Court of Appeals *held*:

Whether an owner of a lot that does not touch the water, but
    abuts a dedicated roadway that does touch the shoreline, has
    riparian rights depends on the effect of the dedication. The plain
    and unambiguous language of the 1887 plat act grants the public
    with fee title to a dedicated roadway for the use and purposes
    stated in the dedication. The dedication in this case states that
    "the streets and alleys as shown on said plat are hereby dedicated
    to the use of the public." This dedication language is unambiguous.
    It is clear that all the depicted streets and alleys are for the public's
    use, which includes use consistent with riparian rights. Accord-
    ingly, the public holds fee title to the dedicated streets and alleys in

the plat in this case, and the public's fee title to Beach Drive cuts off the plaintiffs' riparian rights.

Affirmed.

PROPERTY — RIPARIAN RIGHTS — SUBDIVISION PLATS — STREET DEDICATIONS.

The intent of a plat dedicator determines the riparian rights of an owner of a subdivision lot that does not touch a body of water but abuts a roadway that touches the shoreline and was dedicated in the subdivision plat for public use pursuant to a plat act.

*Vandeveer Garzia, P.C.* (by *Hal O. Carroll*), for the 2000 Baum Family Trust and others.

*Joel D. Wurster, PLC* (by *Joel D. Wurster*), for the Charlevoix County Road Commission.

*Young, Graham, Elsenheimer & Wendling* (by *Harry K. Golski*) for Charlevoix Township.

Amici Curiae:

*Fraser Trebilcock Davis & Dunlap, P.C.* (by *Michael C. Levine*), for the County Road Association of Michigan.

*Gentry Law Offices, P.C.* (by *Kevin S. Gentry*), for the Higgins Lake Civic Association.

*Carey & Jaskowski, PLLC* (by *William L. Carey*), and *Law, Weathers & Richardson, P.C.* (by *Clifford H. Bloom*), for the Michigan Waterfront Alliance and the Higgins Lake Property Owners Association.

Before: FORT HOOD, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM. This appeal involves a dispute over riparian rights to Lake Charlevoix, formerly known as Pine Lake. Plaintiffs are owners of lots fronting Lake Charlevoix but separated from the water by Beach

Drive, a road dedicated to the use of the public that runs parallel and immediately adjacent to the lake. The trial court denied plaintiffs' motion for partial summary disposition, ruling that plaintiffs' lots were not riparian because a statutory dedication vested a fee in the public, thereby destroying plaintiffs' claim to riparian rights. Plaintiffs now appeal and we affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

The property at issue is riparian land on the northern shore of Lake Charlevoix in Charlevoix County, Michigan. On July 15, 1911, the North Charlevoix Company, a Michigan corporation, executed a dedication of the plat of North Charlevoix, the subject riparian land. The plat includes 49 approximately rectangular enclosed numbered lots. The exact dimensions of each of these lots are included in the plat, as well as the inland coordinates. The plat also includes six named streets, including Western Avenue, Central Avenue, Park Avenue, Cottage Avenue, Lake Avenue, and Beach Drive. All these streets run parallel to the lake, except for Central Avenue, which cuts through the center of the plat and is perpendicular to the lake. While the plat shows a single dock extending into the lake at the end of Central Avenue, there is no indication in the record whether this dock was ever built, or how, if it did exist, it was used. With respect to these roadways, the dedication includes the following language: "the streets and alleys as shown on said plat are hereby dedicated to the use of the public." Significantly, none of the platted lots touches the shoreline. Rather, Beach Drive, which runs east to west, abuts the shoreline and separates the 11 platted lots closest to the water, or the front tier lots, from Lake Charlevoix. In other words, these 11 lots extend to the edge of the road, not to the water's edge.

The Charlevoix County Board of Supervisors accepted the plat and the dedication of streets on August 7, 1911. It is undisputed that the public has continued to accept the dedication of the roadways, including Beach Drive. Today, the Charlevoix County Road Commission (CCRC) maintains Beach Drive, which is now paved. A recent aerial photograph, not included in the lower court record, shows that Beach Dive does not actually touch the water's edge. Rather, it appears that a small strip of land and some trees are between the water's edge and the roadway. In addition, multiple docks extend into the lake from Beach Drive.

The eight plaintiffs in this dispute all own front tier lots abutting Beach Drive. The legal descriptions of their properties do not extend to the lake's edge, nor is there a grant of riparian rights to these plaintiffs in their deeds of record.[1] The lots are taxed as "lake view" properties, rather than lakefront properties. Nonetheless, over the years, these plaintiffs have used the lake in front of their lots and, in some instances, have built docks extending into the lake in order to moor their boats and other water-related equipment. According to plaintiffs, the Army Corps of Engineers issued each of them a permit to maintain their docks in front of their properties.[2] Various other owners of properties in the plat not fronting the water, however, also allegedly began using the waterfront in front of plaintiffs' homes. According to plaintiffs, these back lot owners used the

---

[1] The lower court record does not include plaintiffs' deeds. Rather, the CCRC below provided a description of each of plaintiffs' deeds. No reference to lot numbers was made in the description. Plaintiffs never sought to introduce their deeds in the motion for summary disposition. However, in their brief on appeal, plaintiffs concede that there is no grant or express limitation of riparian rights in their deeds of record.

[2] There is no documentation in the lower court record reflecting these facts.

waterfront inconsistently with plaintiffs' riparian rights by installing their own docks or using a dock, and by docking and storing their boats and other water-related equipment on the waterfront. Allegedly, some of these back lot owners were unable to obtain permits to maintain their docks from the Army Corps of Engineers and therefore threatened to sue plaintiffs for permission to maintain their seasonal docks.[3]

On March 20, 2007, as a result of this overcrowding, plaintiffs filed a four-count complaint against these back lot owners, as well as the CCRC and Charlevoix Township, alleging claims of trespass and nuisance and seeking injunctive and equitable relief. Subsequently, on September 9, 2007, the CCRC counterclaimed, alleging that plaintiffs had trespassed on Beach Drive by maintaining encroachments on the drive, including docks, fencing, landscaping, rocks and rock walls, septic drain fields, and a flagpole among various other intrusions. The individually named back lot defendants also counterclaimed, asserting a claim of adverse possession or alternatively seeking a declaration that they have easements, either by acquiescence or by prescription.

On October 4, 2007, additional back lot owners who use the lakefront moved to intervene in the action. The trial court granted the motion on October 25, 2007. On November 1, 2007, these intervening defendants filed a counterclaim also alleging a claim of adverse possession or alternatively for a declaration that they have easements, either by acquiescence or by prescription.

On November 1, 2007, plaintiffs moved for partial summary disposition against the CCRC alone, alleging that there is no issue of material fact regarding which party is entitled to riparian rights. Plaintiffs argued that

---

[3] Again, there is no documentation in the lower court record reflecting these facts.

because their lots were separated from the water by a roadway contiguous to the water, their lots were riparian. In plaintiffs' view, the CCRC has a right to the use of Beach Drive as a roadway only. In response, the CCRC argued that plaintiffs did not have riparian rights because the public holds Beach Drive in fee pursuant to the statutory dedication under the applicable plat act, which means that plaintiffs' lands are not riparian. The back lot defendants also filed a motion in response, arguing that plaintiffs did not have riparian rights because, as shown on the plat, none of their properties abuts the lake. In its response, Charlevoix Township adopted the arguments of the CCRC and the back lot defendants. In addition, Charlevoix Township argued that the township could be defeased of Beach Drive only pursuant to the Land Division Act.

Subsequently, the trial court denied plaintiffs' motion, ruling that plaintiffs did not have any riparian rights. The trial court framed the issue as "whether Beach Drive is an easement with the fee title residing in the front lot owners or whether the public holds fee title." The court, relying on a Michigan property law treatise, found that the statutory dedication resulted in the "fee of this property [being] vested in the public." It followed, in the trial court's view, that because plaintiffs "do not hold fee title to the waterfront land in front of their respective lots, they do not possess riparian rights." The trial court cited a portion of *Thies v Howland*, 424 Mich 282; 380 NW2d 463 (1985), citing American Jurisprudence, in support of its determination. Subsequently, plaintiffs moved for reconsideration, but the trial court denied the motion. This interlocutory appeal followed.[4]

---

[4] This Court granted leave for an interlocutory appeal on September 10, 2008. See *2000 Baum Family Trust v Babel*, unpublished order of the Court of Appeals, issued September 10, 2008 (Docket No. 284547).

## II. STANDARDS OF REVIEW

We review de novo a trial court's determination on a motion for summary disposition. *Klein v Kik*, 264 Mich App 682, 684; 692 NW2d 854 (2005). In reviewing such a motion, we must consider all the pleadings, admissions, and other admissible evidence presented below in the light most favorable to the nonmoving party. *Brown v Brown*, 478 Mich 545, 551-552; 739 NW2d 313 (2007). Summary disposition under MCR 2.116(C)(10) is properly granted if no genuine factual dispute exists and the moving party is entitled to judgment or partial judgment as a matter of law. *Klein, supra* at 685. Further, plaintiffs' claim to establish title as sole riparian owners, or to quiet title, is equitable in nature and is reviewed de novo by this Court. *Dobie v Morrison*, 227 Mich App 536, 538; 575 NW2d 817 (1998). And, to the extent that we must address issues of statutory interpretation or other questions of law, our review is de novo. *Martin v Beldean*, 469 Mich 541, 546; 677 NW2d 312 (2004).

## III. APPLICABLE LAW

At the outset, we note that the material facts of this matter do not appear to be in dispute. Rather, the main question presented on appeal is a question of law: Whether plaintiffs have riparian rights where their lots abut a roadway that runs contiguous to the lakeshore and was created pursuant to a dedication in an approved plat. Plaintiffs argue that the trial court erred by ruling that the dedication of Beach Drive to the public conveyed an absolute fee interest in the land on which the road is maintained. According to plaintiffs, the dedication merely transferred a limited fee for the sole purpose of maintaining the road, and it had no effect on plaintiffs' riparian rights because the dedica-

tion language limited the public's interest in the alleys and streets to maintaining those roadways. We disagree. Because resolution of this dispute requires an understanding of several different aspects of Michigan property law, we first discuss these concepts before addressing plaintiffs' arguments.

### A. WATER RIGHTS

Riparian rights[5] are property rights. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 191; 521 NW2d 499 (1994). Land that includes, borders, or is bound by water is considered riparian land. *Dobie*, *supra* at 538. Generally, it is an "indispensable requisite" that riparian land actually touch the water. *Hilt v Weber*, 252 Mich 198, 218; 233 NW 159 (1930). Owners of such land enjoy certain exclusive rights. *Thies*, *supra* at 288. These rights include the right to the natural flow of the waters with "no burden or hindrance imposed by artificial means." *Peterman*, *supra* at 192 (citation and quotation marks omitted). The riparian owner also has the right to exclusive use of the bank and the shore, including the right to erect and maintain docks, as well as to permanently anchor their boats off the shore. *Thies*, *supra* at 288. Normally, "the interposition of a fee title between upland and water destroys riparian rights, or rather transfers them to the interposing owner." *Hilt*, *supra* at 218.

### B. SUBDIVISION PLATS AND DEDICATED PROPERTY

Development of real estate in Michigan is, in many instances, subject to mandatory statutory control under

---

[5] Land bordering on a river is considered riparian, whereas land bordering on a lake is littoral. *Thies*, *supra* at 288 n 2. This opinion uses the term "riparian rights" interchangeably with "littoral rights."

the Land Division Act (LDA) and its predecessor statutes. See MCL 560.101 *et seq.* Every subdivision must be platted in accordance with the requirements of the LDA. The purpose of these requirements is to promote the orderly layout of lands and to provide for proper ingress and egress to lots and parcels. *Tomecek v Bavas*, 276 Mich App 252, 260; 740 NW2d 323 (2007), rev'd in part and vacated in part on different grounds 482 Mich 484 (2008). To meet this end, it is often necessary to establish public roadways or other areas for public use, which are accomplished through dedications recorded in the plat. "[A] dedication is " 'an appropriation of land to some public use, accepted for such use by or in behalf of the public.' " *Minerva Partners, Ltd v First Passage, LLC*, 274 Mich App 207, 213; 731 NW2d 472 (2007) (citation omitted). Generally, a valid statutory dedication of land for a public purpose requires a recorded plat designating the areas for public use and acceptance by the proper public authority. *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 113; 662 NW2d 387 (2003).

### C. PLATS AND WATER RIGHTS

"Where land is disposed of by reference to an official plat, the boundary lines shown on the plat control." *Mumaugh v McCarley*, 219 Mich App 641, 649; 558 NW2d 433 (1996). And, it is also true, as we have already noted, that property bordering or bound by a waterway is riparian land. *Hilt, supra* at 218; *Dobie, supra* at 538. The inference to be drawn is that the boundary lines of lots in an approved subdivision plat must touch the water's edge in order for the lot to be riparian land. However, this is not always the case. In some instances, a platted lot may be riparian even though it does not touch the water's edge but touches,

instead, the edge of a roadway, which, in turn, abuts the water's edge. See *Croucher v Wooster*, 271 Mich 337, 341-345; 260 NW 739 (1935) (intervening roadway); *Thies*, *supra* at 293 (intervening walkway); *Dobie*, *supra* at 540 (intervening park). Whether an owner of a lot that does not touch the water, but abuts a dedicated roadway that touches a shoreline, has riparian rights depends on the effect of the dedication because "not all dedications of land result in a similar interest being passed to the public authority." *Minerva Partners, Ltd*, *supra* at 214; see also *Thies*, *supra* at 290. As this Court explained in *Minerva Partners, Ltd*, *supra* at 214:

> The nature of the real property interest passing from the grantor to the government unit depends on the method of dedication. *Kalkaska v Shell Oil Co (After Remand)*, 433 Mich 348, 354 n 11; 446 NW2d 91 (1989). " *'The effect of a dedication under the statute has been to vest the fee in the county, in trust for the municipality intended to be benefited, whereas, at common law, the act of dedication created only an easement in the public.'* " *Id.*, quoting *Village of Grandville v Jenison*, 84 Mich 54, 65; 47 NW 600 (1890). [Emphasis added.]

See also *Thies*, *supra* at 290 (acknowledging this same general rule).

### i. COMMON-LAW DEDICATIONS

If the dedication is created at common law, then the front lot owners have riparian rights. This is because a common-law dedication merely creates an easement, meaning that the grantor retains fee title to the land abutting the shore and parts with the property's use only. *People ex rel Dep't of Conservation Director v La Duc*, 329 Mich 716, 719; 46 NW2d 442 (1951); *Minerva Partners, Ltd*, *supra* at 215 ("Easements do not carry title to the land over which they are exercised and do

not dispossess the landowner of its property."). A common-law dedication occurs where there is

> (1) an intent by the owners of the property to offer it to the public for use; (2) [an] acceptance of this offer by the public officials and maintenance of the alley, street or highway by the public officials; [and] (3) . . . use by the public generally. [*Bain v Fry*, 352 Mich 299, 305; 89 NW2d 485 (1958).]

Significantly, there is no requirement that the dedication be recorded in a plat. "Neither a grant nor written words are necessary to render the act of dedicating land to public uses effectual at common law; intent to dedicate can be gathered from the circumstances [alone]." *DeWitt v Roscommon Co Rd Comm*, 45 Mich App 579, 581; 207 NW2d 209 (1973). In the absence of a formal grant or written words, the facts and circumstances must unequivocally show that the dedication was intended. *Littell v Knorr*, 24 Mich App 446, 452; 180 NW2d 337 (1970).

### ii. STATUTORY DEDICATIONS

Conversely, and as already noted, if the dedication is statutory, the public owns the fee under the statute. *Thies, supra* at 290; *Minerva Partners Ltd, supra* at 214. A statutory dedication is accomplished where two elements are met: there is (1) "a recorded plat designating the areas for public use, evidencing a clear intent by the plat proprietor to dedicate those areas to public use, and [(2)] acceptance by the proper public authority." *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 554; 600 NW2d 698 (1999). In determining intent, the courts are to look to language used in the dedication, as well as the surrounding circumstances. *Thies, supra* at 293.

For example, in *Thies*, the recorded plat's dedication stated " 'that the Driveways, Walks and Alleys shown

on said plat are hereby dedicated to the joint use of all the owners of the plat.' " *Id.* at 286. At issue was a walkway recorded on the plat that abutted Gun Lake and separated the front lot owners from the shoreline. *Id.* Our Supreme Court framed the issue as whether the dedication language was intended to grant a fee in the walkway to all subdivision owners or whether it merely granted them an easement along the lakeshore. *Id.* at 293. After reviewing the dedication language used, the fact that the front lot landowners used the land as their own, that no walk ever existed, and that no evidence was presented showing that back lot owners paid any consideration for riparian access, the Court affirmed the trial court's finding that the plattors did not intend to create a fee vested in the public and that the back lot owners had no riparian rights. *Id.* at 293-294 & n 8. The Court stated that "[t]he phrase 'joint use' does not ordinarily denote the passing of a fee interest in land." *Id.* at 293. Consequently, the back lot owners merely had an easement and the front lot owners retained their riparian rights. *Id.* With this result in mind, the import of *Thies* is this: Although a dedication may appear to meet the requirements of a statutory dedication, as it appears to in *Thies*, it does not necessarily follow that a fee title interest is vested in the public; rather, the pertinent inquiry is whether the plattors intended a fee to vest in the public, i.e., what is the dedication's effect.[6] The dedication in *Thies* had the same effect of a common-law dedication.

### IV. THE PLAT ACT OF 1887

Turning to plaintiffs' arguments on appeal, plaintiffs posit that the 1887 plat act creates a "base fee" as

---

[6] Often times, a failed statutory dedication creates a common-law dedication, *DeFlyer v Oceana Co Rd Comm'rs*, 374 Mich 397, 402; 132 NW2d 92 (1965). The result is the creation of an easement.

opposed to a fee simple or fee simple absolute, as the trial court found. While we agree that the statute does not create a fee simple absolute, we see no need to reach the question whether the statute creates a "base fee," as that term is defined in a legal sense, because, as we will explain, the language of the statute is clear and unambiguous.[7] Further, we also disagree with plaintiffs' characterization of the trial court's opinion. Nothing in the opinion and order indicates that the trial court interpreted the 1887 plat act as granting the public fee simple absolute ownership of the dedicated areas.

The North Charlevoix plat was recorded in 1911 and, accordingly, the subdivision is controlled by the plat act in effect at the time, 1887 PA 309. That provision provided, in relevant part:

> The map so made and recorded in compliance with the provisions of this act shall be deemed *a sufficient convey-ance to vest the fee of such parcels of land as may be therein designated for public uses* in the city or village within the incorporate limits of which the land platted is included, or if not included within the limits of any incorporate city or village, then in the township within the limits of which it is included *in trust to and for the uses and purposes therein designated, and for no other use or purpose whatsoever.* [Emphasis added.]

Today, when land is platted, the LDA controls. It contains substantially similar language, and provides in relevant part:

> (1) When a plat is certified, signed, acknowledged and recorded as prescribed in this act, every dedication, gift or

---

[7] Plaintiffs do not define "base fee" in their brief on appeal. Black's Law Dictionary (8th ed) defines "base fee" as "[a] fee that has some qualification connected to it and that terminates whenever the qualification terminates." Base fees include determinable fees, conditional fees, fees simple subject to a condition subsequent, as well as other types of limited fees. *Id.*

grant to the public or any person, society or corporation marked or noted as such on the plat shall be deemed sufficient conveyance *to vest the fee simple* of all parcels of land so marked and noted, and shall be considered a general warranty against the donors, their heirs and assigns to the donees *for their use for the purposes therein expressed and no other.*

(2) The land intended for the streets, alleys, commons, parks or other public uses as designated on the plat shall be held by the municipality in which the plat is situated *in trust to and for such uses and purposes.* [MCL 560.253 (emphasis added).]

When interpreting a statute, this Court must discern and give effect to the Legislature's intent. *Oneida Charter Twp v City of Grand Ledge*, 282 Mich App 435, 442; 766 NW2d 291 (2009). The first step in determining intent is to examine the language used. *Tyson Foods, Inc v Dep't of Treasury*, 276 Mich App 678, 684; 741 NW2d 579 (2007). It is presumed that the Legislature intended the meaning it plainly expressed. *City of Warren v Detroit*, 261 Mich App 165, 169; 680 NW2d 57 (2004). If the language is plain and unambiguous, this Court must apply the statute as written, and judicial construction is neither necessary nor permitted. *Kiefer v Markley*, 283 Mich App 555, 556; 769 NW2d 271 (2009); *Oneida Charter Twp, supra* at 442. The Court may consult dictionary definitions in order to discern the plain meaning. *Alvan Motor Freight, Inc v Dep't of Treasury*, 281 Mich App 35, 43; 761 NW2d 269 (2008); MCL 8.3a. Only if a provision is ambiguous, meaning reasonable minds could differ on the provision's interpretation, is judicial construction permitted. *Tyson Foods, Inc, supra* at 684.

Here, the language of the 1887 plat act is plain and unambiguous. The provision vests a "fee" for public uses in the city, village, or township "in trust to and for

the uses and purposes therein designated, and for no other use or purpose whatsoever." In our opinion, there is no ambiguity here. A conveyance under this provision grants fee title in the public limited to the uses and purposes designated in the plat. A fee is defined as "a heritable interest in land" and denotes an interest that is "the broadest property interest allowed by law . . . ." See Black's Law Dictionary (8th ed). Obviously, however, in the context of the statute, the term "fee" does not indicate a fee interest that is indefinite or infinite in duration, as in a fee simple absolute. Rather, the provision contains language that explicitly limits the public's ownership interest to the "uses and purposes" *designated in the plat,* and for "no other use or purpose whatsoever." Given this plain language, it is clear that the Legislature did not intend to give the public title in the nature of private and absolute ownership, but it did intend to give fee title for a use and purpose as designated in the plat by the plattors.

Consistently with this interpretation, the Michigan Supreme Court has regularly interpreted various plat acts, containing substantially similar language, as conveying only nominal title that is not coterminous with the rights of a proprietor owning lands in fee simple absolute. See *Wayne Co v Miller,* 31 Mich 447, 449 (1875) ("[The] purpose [of the plat act] was to vest in the county such a title as would enable the public authorities to devote the lands to all the public uses contemplated in making the plan."); *Bay Co v Bradley,* 39 Mich 163, 166 (1878) ("[The applicable plat act] vests [the public] with nominal title."); *Backus v Detroit,* 49 Mich 110, 115; 13 NW 380 (1882) ("The purpose of the statute is not to give the county the usual rights of a proprietor, but to preclude questions which might arise respecting the public uses . . . to which the land might be devoted."). More recently, the Supreme Court con-

strued the language in the LDA to mean that the public becomes fee simple owners of the dedicated lands, but only for the qualified purpose stated in the dedication and not for any other purpose. *Martin, supra* at 549 n 19.

Accordingly, we conclude that the 1887 plat act vests in the public a fee title interest limited to the uses and purposes stated in the dedication.

### V. THE DEDICATION'S LANGUAGE

Plaintiffs next argue that the dedication of the roadways had no effect on their riparian rights. In plaintiffs' view, even if the public has fee title to Beach Drive, that title does not sever their riparian rights because the dedication is only for maintaining the alleys and streets of the plat. We cannot agree.

At the outset, we note that the parties do not dispute that the dedication is statutory and we see no reason to disagree. The dedication in the North Charlevoix Plat states that "the streets and alleys as shown on said plat are hereby dedicated to the use of the public." This language unequivocally states a clear intention to dedicate the areas delineated as streets and alleys to the public's use. *Beulah Hoagland Appleton Qualified Personal Residence Trust, supra* at 554. Accordingly, and assuming without deciding that the dedication has been accepted as the matter is not at issue, we conclude that the North Charlevoix plat created a statutory dedication vesting fee title of the streets and alleys depicted on the plat in the public consistent with the 1887 plat act.

Having concluded that the public holds fee title to the dedicated alleys and streets in the North Charlevoix plat pursuant to a statutory dedication, the next question becomes whether plaintiffs have riparian rights, i.e., whether the plattors intended to reserve riparian

rights in the general public or in the front lot owners alone. We could conclude, as the trial court did, that because the public holds fee title in Beach Drive pursuant to a statutory dedication, the public's intervening fee title cuts off plaintiffs' riparian rights. However, it is our opinion that the trial court's analysis concluded prematurely. Whether plaintiffs have riparian rights turns on the nature and scope of the fee interest arising out of the title transferred by the dedication language in the plat consistent with the 1887 plat act, i.e., the plat act only transfers fee title inasmuch as the plattors intended to do so by the words of their dedication. Thus, we must look to the language of the dedication with the goal of effectuating the plattors' intent. See *Tomecek v Bavas*, 482 Mich 484, 490-491; 759 NW2d 178 (2008).

Here, and as already noted, the dedication stated that "the streets and alleys as shown on said plat are hereby dedicated to the use of the public." When discerning the intent of the plattors, we look to the express language used in the dedication in connection with the surrounding facts and circumstances. *Thies, supra* at 293; *Dobie, supra* at 540. In doing so, we view the plat as a whole, harmonizing, if possible, all the language to make it meaningful. Cf. *City of Huntington Woods v Detroit*, 279 Mich App 603, 620; 761 NW2d 127 (2008). If the language is clear and unambiguous from the four corners of the plat, it must be given effect. See *Jacobs v Lyon Twp*, 444 Mich 914, 920-921 (1994) (LEVIN, J., dissenting); also cf. *Minerva Partners, Ltd, supra* at 216.

In the present matter, the dedication language is unambiguous. It is clear that all the depicted streets and alleys are for the public's use. "Use" is defined as "to employ for some purpose; put into service." *Random House Webster's College Dictionary* (1997). "Public" is defined as "the people constituting a community, state,

or nation." *Id.* The language of the dedication in no way limits what type of use may occur on the depicted streets or alleys or who may use them. Rather, the streets and alleys, which include Beach Drive, are dedicated "to the use of the public," which includes by definition use consistent with riparian rights. Significantly, the plattors did not dedicate these areas to just the lot owners of the subdivision or to any other limited community, like in *Thies*, but to the general public. Equally significant is that nothing in the depiction of the plat itself functions to cloud the clear intent of the language. It is plain on the face of the plat that plaintiffs' properties do not extend to the water's edge. Rather, each front-lot property is a rectangular-shaped and numbered lot, the northern and southern boundaries of which run parallel to one another, and the dimensions of which are included. The northern boundaries of each these lots abuts Beach Drive, not Lake Charlevoix. Further, Beach Drive runs all the way to the water's edge, indicating that the plattors intended the public, including all lot owners, to have access to Lake Charlevoix. This depiction does not support the position that plaintiffs have riparian rights, but rather is entirely consistent with the stated purpose of the dedication. In addition, plaintiffs' properties are not taxed as riparian properties, but as properties with a view of the lake. Nothing in the record demonstrates that plaintiffs paid any consideration for the enjoyment of riparian rights and plaintiffs concede that their deeds do not convey them such rights. And, although plaintiffs have set up and maintained docks on the shoreline as if they owned the portions of waterfront in front of their properties, this fact alone, considered in light of the dedication's clear language and other surrounding circumstances, does not serve to vest riparian rights in plaintiffs. Accordingly, given the language of the dedi-

cation, the depiction of the plat, as well as the surrounding circumstances, we conclude that plaintiffs do not have riparian rights.

There is no merit to plaintiffs' contrary argument that the alleys and streets must be used for the limited purpose of maintaining streets and alleys. Plaintiffs' interpretation of the dedication language reads a limited usage into the dedication that does not exist. In construing language, this Court will not inject additional requirements not included by the drafters. See *People v Zujko*, 282 Mich App 520, 523; 765 NW2d 897 (2009). Further, if we were to adopt plaintiffs' interpretation of the dedication, it would fail to have an effect consistent with its meaning, and as a result the dedication would be rendered nugatory. We decline to adopt such an interpretation. *Apsey v Mem Hosp*, 477 Mich 120, 131; 730 NW2d 695 (2007).

VI. CONCLUSION

Our decision makes clear that a statutory dedication under the 1887 plat act vests a fee title interest in the public limited to the uses and purposes delineated by the plattors. After reviewing the language of the statutory dedication in this matter, we have concluded that the plattors did not intend to vest any riparian rights in plaintiffs' properties. This inquiry has required a two-tier analysis: First, whether a valid statutory dedication was created under the 1887 plat act and, second, if so, what type of fee interest has been vested in the public. This latter inquiry requires an interpretation of the plattors' intent. Conversely, had the dedication been one at common law, it would merely have created an easement in Beach Drive, and plaintiffs would retain riparian rights to Lake Charlevoix. *People ex rel Dep't of Conservation Director, supra* at 719.

Here, the trial court's analysis concluded prematurely. It ruled that the plat created a statutory dedication, thereby creating a fee interest that cut off plaintiffs' riparian rights. This will not always be the case. It is easy to imagine situations where a statutory dedication creates a fee interest that is somehow limited by the language of the dedication. The trial court's failure to specifically analyze the language of the dedication constitutes legal error, albeit harmless error. We will not reverse a trial court's decision if the right result was reached, even if for the wrong reason. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 508-509; 741 NW2d 539 (2007). In the instant matter, because the language of the statutory dedication indicates an intent to grant to the public a fee for the unlimited use of Beach Drive, we conclude that plaintiffs have no riparian rights by way of the dedication.

Affirmed.